Good morning, Your Honors. Good morning. This Court has never ruled on any case like this before. This is a case of two confusingly similar titles in expressive works, in fact identical titles. With respect, I know you make the same argument in your brief. This Court has ruled on this exact issue before. It has applied the Rodgers test for 20 years. I don't know what you're talking about. How can you say that we have never applied the Rodgers rule or the footnote in Rodgers in the way you say? Your Honor, I'm not saying that the Rodgers test does not apply here. I'm saying that the Rodgers test... That's what you say in your brief. Respectfully, what I'm trying to communicate to the Court is that the Rodgers test does apply. The question is just like... Do you want to change the way in which we apply it? No. This is not a situation like that Dice-Lisa case that you recently heard where they came from Colorado with that whole SOFR thing. That's not what's going on here. What's going on here is that the Rodgers test, when it was adopted into this circuit through Mattel, then developed with Gordon, where Gordon elaborated on precedent as to what can be explicitly misleading based on the degree to which the junior user uses the mark in the same way as the senior user. In what way is there an explicit concept involved here? You maybe have an implicit use, but how is it explicit and in what way? It's explicit in the way that intentional deception, as the district courts below have acknowledged, can amount to explicitly misleading in the same way that Gordon says that more than just mere use can be... That there can be ways in which the trademark is used that amounts to more than mere use, which is explicitly misleading. So in the same way that Gordon elaborates on the Rodgers test to show, well, in some situations explicitly misleading is sufficient, that Gordon says, well, also, there's some ways just from how the mark is used that can amount to explicitly misleading. What is going on here in this Gringo case is that through intentionally deceptive use, knowing an intentional deceptive use, just as this court has held an academy of motion pictures where this court specifically ruled when one party knows and adopts a mark similar to another's, reviewing courts presume that the defendant will accomplish its purpose and that the public will be deceived. And the Rodgers test does not change that, and no decisions in this circuit have changed that, and no First Amendment considerations could change that. Because in the end of the day, the Rodgers test is balancing the protections of the First Amendment with the protections of the Lanham Act. And to the extent that someone is doing something intentional, coming in and saying, this is what I'm going to do, I'm going to come out today, I'm going to create Rocky II, I'm going to create Gringo, and it's going to be an expressive work, so, oh, terrific, I'll just not make an explicit statement that I'm ripping it off, and I'll just proceed. And obviously people will be saying to the same market, in this case to Amazon customers, the Gringo movie that was using the Gringo trademark title of the book was an Amazon original. The Gringo book was an Amazon number one bestseller. So they'll just release it into this market with the same all capital font to the same people and say, well, you know, hopefully people will just figure it, you know, not figure it out or figure it out. You know, you make an interesting new argument. It's not what you argued in your brief. Your brief wants us to change the law and reinterpret footnote five from Rogers. You also want us to change other aspects of how, I think you said to a presumption of how Rogers would be used, all of which would require an en banc court to do that, because that's our existing case law. With respect, I find your oral argument and your brief to be completely different. What am I missing? Well, I would urge the court, I think it's at page, I think it's at page, I can between this get you the exact page, but the argument that I just made about elaboration is specifically in the reply brief. I have to look and I can cite the page on rebuttal, but it's specifically in the reply brief and that no one's asking any changes here. If you look at... Regarding the application of Rogers on title to title cases or anything like that, is that correct? Absolutely not. What I'm saying here is that in the same way that Rogers elaborated on Mattel, I'm sorry, in the same way that Gordon elaborated on Mattel and said, hey, the explicitly misleading prong, well, the explicit misstatement can be something just understood by the use in a certain context. That sounds exactly the opposite of explicitly misleading. It sounds like implicitly misleading. Well, Gordon expressly says that there can be ways in which the mark is used that based on the degree of similarity, that it can be deemed explicitly misleading. Gordon and the circuit has already ruled that. But what we said in Dr. Seuss is that it is a high bar that requires the use to be an overt claim or explicit misstatement about the source of the work. How do you have that here? Well, in the same way that CI Games, Wild versus Harper, EA versus Textron, DITA versus Mendez... Why don't you tell me how you meet that standard? I just read you our articulation, which is binding on us, of what that standard is. Where is the explicit indication, overt claim or explicit misstatement just by using the word gringo? The intentional use of it is explicitly misleading in the same way that Gordon says that certain uses can amount to explicitly misleading. Those two ideas are congruent with each other. And Gordon specifically says that there can be ways in which there doesn't need to be an overt statement. They change the wording to say that there can be an explicit, I believe intentional deception, or in the way that Gordon was also using it, which amounted to explicitly misleading. So Gordon has already said that you don't need an overexpressed statement, that there can be other ways of satisfying that prong. And that's here what I'm also saying with gringo. And when one of your honors just mentioned Dr. Seuss, Dr. Seuss is entirely distinguishable from this case insofar as Dr. Seuss, the situation there was someone was creating a spoof or a parody saying, oh, the places you'll go, oh, boldly the places you'll go. They added an extra word. Here we have two identical marks. And there in Dr. Seuss, the authors expressly wrote on the cover, this has nothing to do with Dr. Seuss. We're the authors. This is a joke based on Star Trek. This is for people who like Star Trek who are now adults, not kids reading, not adults or kids reading bedtime stories. So the markets were entirely different. The whole idea was to poke fun at the, at Dr. Seuss for a kind of parody. This is not a situation like that. This is a situation where there's a book and there's a movie with similar themes with the exact same title. I think we're all asking the same question. Basically, what in this, in these pleadings shows that there's anything other than implicit suggestion regarding its source? I don't find anything that's explicit. What, what do you cite in the record that title to title use in this case is an explicit suggestion regarding its source? I'm relying on Gordon and how Gordon says that to be explicitly misleading, there can be ways besides the actual word saying, Hey, we're, we're, we're purporting to be you. Gordon doesn't do that. Gordon simply says that there can be other ways to get to explicitly misleading besides actual you're saying that some dicta in Gordon is your best bet. Is that what you're saying? No, this isn't dicta and Gordon. This is, this, this is Gordon. Gordon is specifically and directly. The whole point of Gordon is that it says that, that there can be situations in which there's not expressed statements that still amount to the explicitly misleading prong being satisfied. That is Gordon's heart, not dicta. It is Gordon. And here I'm saying in the same way that in the second circuit, that, that the court there said that, Hey, when it comes to title versus title cases, that the explicitly misleading prong can be satisfied through a particularly compelling amount of likely confusion. And that is not inconsistent with anything this circuit has ever held on the matter. Let me ask you this slightly different subject. As I'm sure you know, the Supreme Court is going to be deciding probably very soon, Jack Daniels Properties Inc. versus VIP Products going to deal in part with Rogers. Should this, any decision in this case be delayed until after the Supreme Court decision in Jack Daniels comes down? Um, I, I will answer that question, Your Honor. I, I do want to reserve five minutes for rebuttal. Okay. Well, just answer that question then and reserve it. Um, I, I, I don't think it should necessarily, I'll leave that to, to, to your honors to decide, I guess, the order in which the case is under review. It's only a few weeks. Yeah. Um, but, but, but I would say that I would say that regardless, I would say that there's already a split in this circuit as to how district courts are handling this case. And so far, CI Games, Wild versus Harper, Electronic Arts versus Textron. You're not the Supreme Court issues Jack Daniels. Not drinks it, issues it. Um, I don't think that's needed, but I leave that to you. Okay. Why don't you stay the rest of your time then, okay? Yes. Good morning. Uh, good morning, Your Honors, and may it please the Court. I'll start really, Judge Smith, where you started. For over 20 years, some would say with remarkable consistency, uh, the Ninth Circuit has applied the Rogers v. Grimaldi test when assessing claims of trademark infringement, uh, where the infringement, uh, is based on a defendant's use of an allegedly infringing mark that implicates artistic expression. This Court has applied the Rogers test to cases involving song titles, as in Mattel v. MCA, TV show titles, as Your Honor knows from, uh, Judge Smith's opinion in Mattel, uh, I'm sorry, in 20th Century Fox v. Empire, book titles, a title versus title case in the Dr. Seuss case, uh, that Judge Collins was talking about, video games in Brown versus EA and ESS Entertainment, and many other cases. Of course, Rogers itself, the origin from which this progeny sprung, was a movie title case, uh, concerning Ginger Rogers. Um, just because I cannot help myself, Judge Hamilton, in his prior role, similarly applied Rogers in the Southern District of Indiana to a case involving Jackson 5. It was correct, I'm sure. Absolutely 100% correct. Um, and, um. Completely forgettable. And, uh, fair, fair enough. I'm, I'm happy to remind you of all the gory details. Um, the point being, uh, Judge Hamilton, it was a case about Ripples and Waves, and whether or not that Ripples and Waves case, uh, could be, uh, title could be used by the Jackson 5 in the title of its albums. In virtually every one of these cases, and in fact, the, the Gordon Court actually openly says this, the Court has found that the Lanham Act claim fails as a matter of law. The notion, uh, that this case is different, um, has been rejected. Because every plaintiff argues that their case is different, and what this Court continuously goes back to, over and over again, again, is, it's not a likelihood of confusion test. And Judge Smith, you are absolutely right. That is what the brief argues. They say, well, let's make it a particularly compelling likelihood of confusion. Well, in the Mattel case, and in all the cases that have followed in this circuit, the Court has said, no, the sleek craft factors do not matter. Even in Gordon, the Court said that. Is it your view that, um, in order for us to rule in favor of the appellant in this case, that we'd have to go on Bach because we would be overruling many of our opinions? That is absolutely right. Of course, the panel does not have the power, in this case, uniquely to overrule even certain judges in this panel's own prior opinions. If this Court were to abandon the Rogers test, which has been the law of this circuit, and of many other circuits, for decades, that would, at the very least, require an en banc court. I'm sorry, go ahead. I'm just going to follow up on what I said to your colleague about Jack Daniels. As you know, Supreme Court, usually by the end of June, but maybe first week in July, will give us an answer. It's our collective understanding that the Rogers application, the Rogers case of the Lanham Act, is one of the key issues involved. Do you agree that we should wait the issuance of that opinion before we issue a decision in this case? Your Honor, I was actually just reading the transcript again last night from that case. I'm dubious that the Court is actually going to touch Rogers. I think they're going to find a way out. The Jack Daniels case, the Jack Spaniel case, as the Court is aware, it actually asks a slightly different question. It's about whether the First Amendment ought to even apply. I take this from the cert petition filed, where the defendant makes, quote, humorous use of another's trademark as one's own in a commercial product. There's a whole overlay in that case about, does the First Amendment even get implicated when all you are talking about is a commercial product and an admitted use of the trademark except for humorous purposes? And that, of course, is what Rogers is all about. Well, I think what some would argue in Jack Daniels is Rogers is about artistic expression. And this Court, I think we are foolish to try to guess what the Court does, of course. True. The Supreme Court, I think there was a lot of indication that zeroing in on this idea of, well, is a commercial product really the sort of artistic expression that Rogers or its progeny was meant to protect? So, I'm not sure I'm getting an answer to my question, but I gather what you're saying is we don't know whether the Supreme Court is going to say anything that would have anything to do with this case, but on the assumption that it might, it's coming up, say, within a month. Should we wait to issue a decision in this case? Your Honor, I think that, of course, I want to tell you I win plainly under Rogers, so you should issue your opinion. I think certainly prudence would dictate, if the Supreme Court might answer this question, we are at the end of the term. There are only a handful of cases left to be decided. If the Supreme Court might answer the question, I think that prudence would indicate that this Court ought to wait and see if the Supreme Court affirms Rogers or says it doesn't apply in that particular commercial product case or says it doesn't apply at all, but I know a number of justices did express an unwillingness to disturb law that the circuits have been applying for decades. But – What's your response to counsel's reliance on Gordon as essentially modifying the understanding of the explicit rule in the context of titles? I think it's an interesting reading that has been rejected by this Court in Dr. Seuss and frankly does not withstand the language of Gordon. The Gordon test – I'm sorry, the articulation of the issue in Gordon by the panel there, one, the panel says this is the outer limits of Rogers. In that case, you had, according to the panel, the use of the trademark phrase with nothing else. I think Gordon actually turned on the artistic expression element of Rogers, that is prong one, where the panel says there is no separate artistic expression here, or at least that a jury could believe that. In Dr. Seuss, the Court says, again, look, Gordon is at the outer limits. The explicitly misleading prong is the law in this circuit. Even Gordon reaffirmed that you need to do something explicitly misleading. But Gordon also has this language where they say, you know, we've said that the mere use of the trademark alone cannot suffice to make such use explicitly misleading, but then they go on to say that each time we've made that observation, it was clear that consumers would not view the mark alone as identifying the source of the artistic work. And then they go on to say, you know, that – and I mentioned the comment about titles in Rogers, that titles may be the one case, you know, other than like a very famous corporate name where it is possible that that could be true. And so if somebody comes out with Rocky 12 and that there's nothing else other than Rocky 12, is it not immediately explicitly misleading to people that that really represents that it's in the Rocky series? Well, I think no, Your Honor. I think the fact pattern that you're giving – Star Wars 8 is not misleading, explicitly misleading that it is part of the Star Wars franchise. Well, in that case, it may very well be, but you still have to show that there is an overt indication, an explicit misstatement, or an explicit implication. Maybe, you know, Gringo didn't achieve the same fame as Rocky or Star Wars. But if it had, then slapping Gringo on a movie would be explicitly misleading because it would make it look like it's the same famous thing everyone knows about. Well, I understand the factual assumption you're asking me to make, but that's not actually what we have here. Of course, the title of the book and the title of the movie are not the same. The title of the book is a much longer title than just Gringo. Even Plaintiff admits that the cover art is not the same. The story is different. The way it is presented is different. So you don't have a situation where there is really exclusively just piggybacking on, as Your Honor is describing, a title that has captured the public consciousness. But I think the Dr. Seuss case is actually a really good example of this, Your Honor. In Dr. Seuss, you have two books where a single word has been changed by the junior user. The word boldly has been added to the title of a well-known Dr. Seuss book. In Dr. Seuss, the defendant admits intending to copy the style, the art, the tone of the original Dr. Seuss books. In Brown versus EA, Your Honor, you have, again, a case rejecting as a matter of law the Lennimat claim. You have a defendant admitting that they were using Jim Brown's likeness, that they used it for many years in the game. You have allegations of intentional deceit. And in Gordon, Your Honor, the court actually, I believe, helps in title versus title cases. As the court says in Gordon, in cases involving the use of a mark in the title of an expressive work, such as the title of a movie, Exciting Rogers, a song, Exciting MCA Records, a photograph, Exciting Walking Mountain, or a television show, Exciting 20th Century Fox, the mark obviously served only as one, quote, element of the work and the junior user's artistic expressions. And I believe that analysis in Gordon, again, takes us back, Your Honor, to the first prong of Rogers, which is, did the junior user add any artistic expression? That issue is not in dispute in this case. Plaintiff admits in its briefing, admitted before the district court, that obviously the film Gringo has all sorts of additional artistic expression applied. Additionally, Your Honor, the notion of grafting a new standard into the case law about explicit misleading that now starts looking at, in this case, an information and belief allegation about what defendants intended, likewise, I think, would be rejected by the cases coming out of this circuit, where you have a lot of facts, again, going back to Dr. Seuss, going back to Brown as two examples, where the defendant in those cases knew of the mark, knew of the protected use, and used it anyway. And at the risk of reminding Judge Hamilton something that happened years ago, you had that was argued as... What do we do... Obviously, the existing Ninth Circuit case law is very favorable to your position. What do we do with that case law if we get the Star Wars 8 or Catch-23 or Slaughterhouse 6? What do we do? Those are troubling examples. I think there's a couple of things that need to happen there. I think the court would go through the Rogers test, as this court has articulated it, and say, well, is there some new artistic expression? There's nothing explicitly misleading about those titles under the standard that you're advocating. Well, I think it may depend. If you have Star Wars 7, and then Star Wars 8 comes out, and it has similar cover art, and it has a similar theme that's being presented, and there's an implication, because it can be an... What's that different from this case, apart from the level of fame and whether or not there actually is secondary meaning associated with Gringo? Because in this case, Your Honor, there is no evidence at all. There is not even an allegation in the complaint of explicit indication, overt claim, or explicit misstatement. There may be... You just have the titles. Suppose that's all you've got in Star Wars 8. Well, I think the court would have to then address it at that time with those facts, whether or not that ought to be protected. What that suggests to me is that the real problem here is secondary meaning, rather than applying the Rogers test. I think that that may be a problem, but in a complaint that lacks a single allegation of an explicit express implication, an overt claim, or an explicit misstatement, I don't think this is the case to test the outer limits of Rogers. And I think Gordon perhaps was that case, where it acknowledges we are at the outer limits. This is in the heartland of Rogers and Mattel. I don't think that the scenario, Judge Hamilton, that you are describing, that Judge Collins is describing, is the kind of work that this panel in this case ought to be undertaking. So from your perspective, Gordon might have meant something here, but the facts of this case, and as pled, doesn't get close to the issue that my colleagues have been raising about Rocky VI or whatever. I think that's right, Your Honor. And I think we win under Gordon, and I think we win under all of the other cases that we have cited as well. And as the court knows, the district court actually didn't... The district court went through Gordon's additional two steps and still got out at the same outcome. The district court said, well, how are they in the same market and what else happens here? What has been added to the artistic work? So I believe that whether we are looking exclusively... If Gordon was the only law of the circuit, or if we had all of the other cases pre- and post-dating Gordon, I think we win under the complaint that has been alleged in this case. Because, in part, what Judge Hampton said, you have to look at secondary factors. You don't find those alleged here, is that correct? Well, you look at the secondary meaning question, I think that would be a separate question. Here... You all have not contested that in your motion to dismiss, right? We moved on accepting the allegations in the complaint as true as one does in a motion to dismiss. Exactly. Right. And then applying... Of course, I think there's a real question about that, but putting that aside... That's not in front of us right now. Yes. We moved on Rogers, and we said that there isn't even an attempt here to show one of the three things that this court has repeatedly said is required to establish explicitly misleading, which is an express indication, an overt misstatement, or an express or overt misstatement. Okay. Any other questions about my colleague? Just one logistical question. You filed a motion to transmit exhibits to the court, and the physical DVDs we received apparently are for the UK and Ireland, and the DVD player spits it out and says there's a mismatch on the country of the disc and the device, so whatever you forwarded to us didn't do the job. I don't even know what to do with that, Judge Collins, other than I'm sorry. Submit replacements... I'm sorry. Yes. ...that are authorized for use in the United States. Yes. I will do that, and I do want to just, if I could, in three seconds, just respond to that, because I don't know if the court even needs, other than for artistic pleasure, to watch the DVD, because the... No, I mean, we have the descriptions, but... Right. And you have admission that they say defendant's film tells a different story. We tried to look at it, and we were unable to do so. I appreciate that. All right. Very well. Thank you. Thank you very much for your argument. So, Mr. Dreyer, you have some rebuttal time. Go ahead. The bottom line here is that there is a district court split in terms of how to proceed on a case like this. There's four cases that have found that my view on things is reasonable, and that's how they've proceeded. There's one court, Judge Selden's court, which had a different view, and that's why we're here today. So, regardless, what I'm saying is not an approach that has been universally thought to be inconsistent with Gordon or inconsistent with any precedent in this circuit. And as I've shown before, ruling differently than how I'm suggesting would actually overturn Academy, which says that if people intend, which is this circuit's case, which if people intend to deceive, they accomplish that. Rogers does not change that. In addition, a ruling that rejects this idea that you could, in a title versus title case, that you can intentionally deceive somebody and get away with it as long as you don't actually come out and make an explicit statement, would also create a circuit split with the Second Circuit. It would also create a circuit split with the Fifth Circuit, and that has its own issues. In addition, I wanted to point, Your Honor, to page 9 and 10 of the reply brief, which makes the argument about the elaboration on Gordon, which I indicated before was included in the brief. And that whole section in which that's in, which is from page 8 to 11 of the reply, expands upon that. And I'd like to draw, in particular, Your Honor's attention to Gordon at page 270, which specifically gives the examples of law and order, special hip-hop unit, versus law and order, special victims unit, as problematic under Gordon. They specifically say that if that was going on, that could be explicitly misleading just on the title itself. The etiquette of Gordon for that kind of scenario is that it be clear that consumers would view the mark alone as identifying the source of the work, because law and order, Rocky, Star Wars, Disney, everyone knows what those mean. Have you pleaded enough to establish you within that rule? Not only have we pleaded it, but Judge Selma has found that we did plead enough for secondary meaning. That's been ruled on. He thought that there was enough. That wasn't the issue. And whether it's Walt Disney mark or any other mark, there's no distinction between a super famous secondary meaning mark and another one that has secondary meaning. We have secondary meaning within our consumer base, and, you know, that's been established. Well, now, you've alleged it. I mean, I've got to say, I'm pretty skeptical about whether you could ultimately prove that if you got the chance, but maybe that's not really before us. Well, for the purposes today, for a motion to dismiss, Judge Selma did find that we adequately alleged the facts required for secondary meaning. I would also like to point out that the titles are identical. The title and the mark is in gringo, not the subtitle, not anything else. It's the title gringo, which has the secondary meaning. That's what we're alleging here. That's what was found here. Since we're running out of time, let me ask you this. One of the things that you dispute is that the California Supreme Court would adopt the Rogers test. What's your best argument to that effect? The state court. The state court, right? Yeah. The California Supreme Court has already said that it applies the likelihood of confusion test under the UCL claim, and I'm glad you brought that up. So notwithstanding all we've talked about here today, for the federal court to sit and which would preclude, which would require explicitly misleading for UCL claims would invade state legislative authority. The courts there have already found that the explicitly misleading test is never a per se rule, that at most it is the particularly compelling test under the Second Circuit, but when it comes to title versus title, they have adopted footnote five, they have rejected the Rogers test. The Supreme Court of California? You're saying the Supreme Court of California has adopted what? There's two courts of appeals in California that have ruled it. Different. No, I know, but. Yes. There's two appellate courts that have ruled in the way that I'm saying, and then the California Supreme Court in Cervoa v. Sony in 2022 cited those two cases with approval in proceeding  Did they decide the issue? They, my recollection is that they cited the cases with approval. I don't know how explicit they were in, in going beyond that. Thank you. But the. Your time is up. Let me ask my colleagues whether either has additional questions. Thank you both for your argument. Interesting case. Case disargued is submitted. Thank you, Your Honor.
judges: SMITH, Hamilton, COLLINS